**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

BERRY FLOOR USA, INC., ALLOC, INC.,
and BERRY FINANCE, N.V.

            Plaintiffs,

v.                                                   Case No. 08-CV-0044

FAUS GROUP, INC.,

            Defendant.

---

## ORDER

On January 11, 2008, the plaintiffs - Berry Finance N.V., Berry Floor USA, Inc., and Alloc, Inc. (collectively referred to as "Berry") filed their complaint in this action seeking a declaratory judgment of non-infringement or invalidity of defendant's patents. On March 21, 2008, the defendant filed a motion to dismiss or, in the alternative, to stay or transfer this action. Defendant requests that if this court decides to transfer the present case, that it do so to the Northern District of Georgia - the venue in which it has brought claims against plaintiffs for breach of contract and patent infringement. This court finds, for the reasons detailed below, that the Northern District of Georgia is a more convenient forum for adjudicating this dispute, and thus grants defendant's motion to transfer.

**I.**    **BACKGROUND**

In 2005, Faus Group, Inc. ("Faus"), Industrias Auxialiares Faus S.L. ("IAF") - Faus's parent company - and Berry Finance N.V. entered into a licensing agreement

whereby Berry Finance N.V. and its subsidiaries - Berry Floor USA, Inc. and Alloc, Inc. - were granted certain licenses in a number of patents owned by Faus and IAF. In 2007, a dispute arose as to whether Berry was violating the licensing agreement by allowing a third party Chinese supplier to utilize the patents for products produced for Berry. Faus and Berry were unable to resolve this dispute, and thus on December 27, 2007, Faus sent Berry a letter (Mollo Decl. Ex. H) in which Faus purported to terminate the licensing agreement, and invited Berry to meet with Faus on January 8, 2008, in order "to discuss terms for Berry's continued use of the Faus patent rights." Berry and Faus ended up meeting to discuss the matter on January 12, 2008, at which point Berry informed Faus that it had filed the present action in Wisconsin the previous day, though it did not serve Faus with the complaint at that time, and in fact stated that the lawsuit could be withdrawn if only Faus would change its position (Flores Decl. ¶ 9) - a sentiment Berry repeated on January 29, 2008 (Mollo Decl. Ex. J) and January 30, 2008 (Flores Decl. ¶ 12-13).

As January 2008 drew to a close, Faus and IAF filed suit against Berry in the U.S. District Court for the Northern District of Georgia. However, the parties continued to negotiate, and they agreed not to serve their respective complaints on each other. (Flores Decl. ¶ 14). Then on March 3, 2008, the parties determined that they could not resolve their dispute without litigation, so they served the complaints upon each other. (*Id.* ¶ 15).

On March 21, 2008, Faus filed a motion in the Wisconsin action petitioning this court to dismiss Berry's claim under 12(b)(1) & (6) and the Declaratory Judgment Act or, in the alternative, to stay or transfer the case to Georgia. Shortly thereafter, on March 28, 2008, Berry filed a motion in the Georgia action petitioning that court to transfer that case to Wisconsin. On June 10, 2008, Judge Thomas W. Thrash, Jr., the district court judge presiding over the Georgia case, ruled to hold Berry's motion to transfer in abeyance until this court, the court of first-filing, has ruled on Faus's motion to transfer.

## II. ANALYSIS

To determine the appropriate venue for a patent law case, district courts should look to the case law of the Federal Circuit. Particularly on point is *Micron Technology, Inc. v. Mosaid Technologies, Inc.,* 518 F.3d 897 (Fed. Cir. 2008). In *Micron*, the court lays out the analysis district courts should engage in when determining whether or not to retain jurisdiction over a declaratory judgment action, or to transfer that action to the court in which the infringement suit was brought. *Micron* is itself a response to the Supreme Court's ruling in *MedImmune, Inc. v. Genentech, Inc.*, 127 S.Ct. 764 (2007). Prior to *MedImmune*, for a party in a patent case to bring a declaratory judgment action, that party had to show: "(1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with

-3-

Case 2:08-cv-00044-JPS   Filed 10/15/08   Page 3 of 17   Document 31

the intent to conduct such activity." *BP Chemicals. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed. Cir.1993). However, in *MedImmune*, the Court held that the first prong (the reasonable-apprehension-of-suit test) conflicted with Supreme Court precedent. 127 S.Ct. at 774 n. 11. "Thus, in place of the reasonable threat of imminent suit test, the Supreme Court required a showing of 'whether the facts alleged under all the circumstances show that there is a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Micron*, 518 F.3d at 901 (quoting *MedImmune*, 127 S.Ct. at 771 (quoting *Md. Cas.*, 312 U.S. at 273, 61 S.Ct. 510)). The court in *Micron* states that in the post-*MedImmune* environment, a "more lenient legal standard facilitates or enhances the availability of declaratory judgment jurisdiction in patent cases." 518 F.3d at 902. "Thus," the *Micron* court states, "in cases such as this with competing forum interests, the trial court needs to consider the 'convenience factors' found in a transfer analysis under 28 U.S.C. § 1404(a)."

Prior to *MedImmune*, the district court's analysis in a case such as the one before the court today was to generally favor the forum of the first-filed action, but the court nonetheless retained discretion to make exceptions to that general rule based on varying considerations. *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 936 (Fed. Cir.1993) (*abrogated on other grounds*, *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)). Such considerations included: a party's intention to preempt another's infringement suit; the convenience and availability of witnesses; the

-4-

absence of jurisdiction over all necessary parties; and, the possibility of consolidation with related litigation. *Genentech*, 998 F.2d at 937-38. However, according to *Micron*, the "'convenience factors' take on added significance in light of the [post-*MedImmune*] legal environment surrounding declaratory judgment jurisdiction in patent cases." 518 F.3d at 904. The *Micron* court surmised that the more lenient test imposed by *MedImmune* would lead to an increased likelihood of a race to the courthouse by parties in order to be first to file in a patent case. *Id.* Thus the *Micron* court held that the proper analysis requires less reliance on the first-to-file rule, and a greater reliance on a balancing of all relevant convenience factors. *Id.*

Berry takes the position that because it would have qualified under the pre-*MedImmune* declaratory judgment jurisdiction test, this court should rely more heavily on the first-to-file rule, and disregard *Micron's* instruction to place more importance on convenience factors. Berry's argument is certainly a reasonable one, for indeed, the *Micron* court's instructions seemed to be based on a desire to "reduce the incentives for a race to the courthouse" - a race that the *Micron* court views as being enabled by the more lenient *MedImmune* test. *Id.* Perhaps Berry is correct that declaratory judgment plaintiffs who satisfy the pre-*MedImmune* test should not be subjected to *Micron's* balancing analysis, but should rather get the benefit of the prior analysis which places greater weight on which party was first to file. Though this court has doubts that the *Micron* court intended to create such a bifurcated analysis, it does not rule out that that is the proper result. However, in the

-5-

Case 2:08-cv-00044-JPS   Filed 10/15/08   Page 5 of 17   Document 31

instant case, the court is fortunate enough not to have to decide the matter, for the convenience factors dictate transfer, regardless of whether *Micron's* reduced emphasis on first to file is applied or not.

### A. Berry Was the First to File

As a preliminary matter, the court addresses Faus's argument that Berry was not the first to file. Were that the case, then Berry would not be entitled to any deference on the matter, and the case would be much easier, and would clearly require transfer. While the court finds Faus's argument persuasive, it does not adopt it.

Berry filed the Wisconsin action eighteen days before Faus filed the Georgia action. However, Faus alleges Berry is not the first to file because Berry failed to include IAF as a defendant in the Wisconsin action. IAF is a signatory to the license at the heart of this dispute and, more importantly, IAF is a majority owner of several of the patents at issue in the suit. (Mollo Decl. Exs. 1 & 3). "A patent owner should be viewed as a necessary party if it retains 'any interest' in the patent." Erbamont Inc. v. Cetus Corp., 720 F. Supp. 387, 393 (D. Del.1989) (quoting 5 Donald Chisum, *Chisum on Patents* § 21.03[3], at 21-167 (1988)). Because IAF is a necessary party, and one for whom joinder is feasible, Berry would accordingly need to amend its complaint to include IAF. Faus asserts that that amended complaint would not relate back to the time of original filing. For an amendment that changes the parties against whom a claim is asserted to relate back to the date of the original pleading,

-6-

the newly added party must have known "or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C). Berry's failure to name IAF would likely not qualify as a "mistake," because it results from a lack of knowledge, not from a misidentification of the parties. *Hall v. Norfolk Southern Railway Co.*, 469 F.2d 590, 596 (7th Cir. 2006); *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 467 n. 1 (2000) (Section 15(c)(1)(C) "applies only in cases involving 'a mistake concerning the identity of the proper party.'") Thus, Faus's argument goes, Berry's amended complaint would not relate back to the time of the filing of the original complaint, and the Georgia action would, therefore, be the first filed.

As previously mentioned, Faus's argument is persuasive. In fact, Berry itself utilized essentially the same argument in an action brought against it by Pergo, Inc. in New York to get the New York action transferred to this very court where Berry had filed a declaratory action. *Pergo, Inc. v. Alloc, Inc.*, 262 F.Supp.2d 122 (S.D. N.Y. 2003). The New York court held that though Pergo filed its original complaint before Berry filed its declaratory action in this court, Pergo's amended complaint (adding Berry as a defendant, and filed after Berry's action) did not relate back to the filing of the original complaint, and thus Berry's action in this court was the first filed. *Id.* at 131-32. Faus cites *Pergo v. Alloc*, as well as other cases, as support for its contention. *See Mallinckrodt Med. Inc. v. Nycomed Imaging AS*, No. 98-CV-444, 1998 WL 962203, 49 U.S.P.Q.2d 1474 (E.D. Mo. 1998); *Lincoln Nat'l Life Ins. Co.*

-7-

*v. Transamerica Fin. Life Ins. Co.*, 2006 WL 3833358, 4 (N.D. Ind. 2006); *Static Control Components, Inc. v. Dallas Semiconductor Corp.*, No. 02-CV-1057, 2003 WL 21666582, 10 n.14 (M.D. N.C. 2003). Berry, however, does not point to any case law to refute the notion that its amended complaint should not relate back to the original complaint. Berry's lack of attention to this matter is inexplicable given that a finding for Faus on this issue would have been dispositive of the entire motion, for without its "first to file" status Berry would not have the proverbial leg to stand on, as the few relevant convenience factors all dictate transfer of the case.

Despite the holding in the above cited cases, the court finds the rationale and holdings in several other cases to be more persuasive. Judge Cynthia M. Rufe, who site in the Eastern District of Pennsylvania, offers a compelling analysis that holds that amending a complaint does not affect a party's first filer status.

> The Federal Circuit has not expressly stated a view as to whether, in patent cases, the first-to-file rule applies only where the concurrent actions at issue involve identical parties. When deciding patent matters based upon particular aspects of the first-to-file rule on which the Federal Circuit has been silent, district courts look to understandings of the doctrine as developed generally in the federal courts. Regarding the instant question, courts within and outside this Circuit have found no requirement that the parties in the concurrent actions be the same in order for the first-to-file rule to apply. Meanwhile, district courts deciding patent actions in this Circuit repeatedly have stated that the rule hinges on which court first takes possession of the subject of the dispute, and not necessarily the parties to it.

*Shire U.S., Inc. v. Johnson Matthey, Inc.*, 543 F.Supp. 2d 404, 408-09 (E.D. Pa. 2008) (footnotes omitted). There are several rulings to support this analysis. *See Advanta Corp. v. Visa U.S.A., Inc.*, 1997 WL 88906, 3 (E.D. Pa. 1997) ("Advanta

-8-

cannot avoid application of the first-filed rule simply by asserting that it was not initially a party to the earlier filed action. The first-filed rule turns on which court first obtains possession of the subject of the dispute, not the parties of the dispute."); *E.E.O.C. v. University of Pa.*, 850 F.2d 969, 970 (3rd Cir.1988) ("In all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it."), *aff'd on other grounds*, 110 S.Ct. 577 (1990); *Schering Corp. v. Amgen Inc.*, 969 F.Supp. 258, 267 (D. Del. 1997) ("A 'relation-back' inquiry is unnecessary; the point of inquiry is the original complaint, not the amended complaint"); *Time Warner Cable, Inc. v. USA Video Technology Corp.*, 520 F.Supp.2d 579, 585 n.48 (D. Del. 2007) (same).

This court, confronted with conflicting case law on whether it should look to the time it took possession of the case, or the time the non-relating-back amended complaint was filed, finds that the rationale for looking to the time of possession is more logical. Otherwise, the court would be in the strange position of having the district court in Georgia deferring to this court as the court of first-filing, only for this court to transfer the action finding that it was not actually the court of first-filing. The problem thus arises that if this court were not the court of first-filing, then the ultimate decision as to the proper venue should then be made by the Georgia court, and then this court's decision on the matter would be improper, as the correct course would be to defer to the Georgia courts. However, adopting a bright line rule that the first court to take possession of the matter is the court of first-filing, regardless of later

-9-

amendments, furthers the goal of providing "national uniformity in patent practice." *Genentech*, 998 F.2d at 937.

Despite this court's stance, the court is well aware of the conflicting authority on the matter. Besides the cases cited by Faus, the court notes that *Chisum on Patents* states that:

> The priority rule relates to the date of the filing of the action between the parties, not the date when the issues were added by amendment to the pleadings or otherwise. On the other hand, the date of the amendment seems to be controlling when the amendment adds a party.

Donald Chisum, 8 *Chisum on Patents*, § 21.02[4][b], at 21-304 (2005) (footnotes omitted). However, the only authority *Chisum* cites for this proposition is *National Foam, Inc. v. Williams Fire & Hazard Control, Inc.*, 1997 WL 700496 (E.D. Pa. 1997) - a case which itself relies on the above cited passage from an earlier version of *Chisum*. Ultimately, the issue is likely to remain unresolved until the Federal Circuit weighs in. Fortunately, in the instant case, while a finding for Faus on the matter would be dispositive in favor of Faus, a finding for Berry on the other hand is not dispositive for Berry, so the order of the court would remain unchanged even were it reversed on this point.

### B. Convenience Factors Dictate Transfer of Case

Regardless of the importance post-*Micron* that district courts are to place on the venue in which the first action was filed, it is clear under either a pre-*Micron* analysis, or a post-*Micron* strict 1404(a) analysis, the district court must have good

-10-

reason to disturb the plaintiff's choice of forum. Such reasons "are not rare, and are made when justice or expediency requires, as in any issue of choice of forum." *Genentech,* 998 F.2d at 937.

One reason to ignore any presumption that may imbue to the first filed action is when that action was filed in bad faith or as a tactical maneuver. In the instant case, Berry filed this action four days after receiving Faus's letter inviting Berry to enter into negotiations, and one day before actually meeting with Faus to commence negotiations. Faus likens Berry's actions to that of the plaintiff in *EMC Corp. v. Norand Corp.*, a case in which the district court's dismissal of a declaratory judgment action was upheld in part because the action was filed as a tactical measure. 89 F.3d 807, 815 (Fed. Cir.1996), *overruled in part on other grounds*, *MedImmune*, 127 S.Ct. 764. EMC filed its declaratory action while it was involved in negotiations with Norand, and its filing came shortly after learning Norand planned to enter negotiations with EMC's competitors. *Id.* After filing the action, EMC called Norand to say it was "merely a defensive step" and that EMC wanted to continue negotiating, and that EMC "decided to file suit because 'they just thought it was in their interest to protect themselves first and continue discussions.'" *Id.* In the instant case, Berry's actions, while evidencing a tactical motivation, do not rise to the level of those in *EMC.* Such actions on Berry's part consist of: 1) filing suit before even meeting with Faus, despite Faus's stated intentions of resolving the matter through negotiations; 2) filing suit in a forum it knew would be inconvenient, or at least less convenient, for

-11-

Faus (as evidenced by the fact the parties had already agreed that the Northern District of Georgia would be a convenient forum); and 3) repeatedly stating that the Wisconsin action could be withdrawn if Faus acquiesced to Berry's position in the negotiations. While none of these things alone or together would merit dismissal of Berry's suit, this court does find that they do demonstrate at least a partial improper motivation by Berry, and do warrant this court granting less deference to Berry's first to file status in these proceedings brought pursuant to such motivation.

Of some, but by no means crucial, importance to the analysis in the previous paragraph is that there are no convenience factors that weigh in favor of Wisconsin. If there were such factors, then the timing of Berry's filing would still evidence an at least partially improper motivation, but the place of filing would not necessarily. But here, Berry has filed suit in a venue nearly eight hundred miles from the place where the parties had contemplated, in Art. 11.1 of the licensing agreement, litigating any disputes. (Mollo Decl. Ex. B Art. 11.1) ("Faus and Licensee agree that any disputes arising out of or relating to this Agreement or the Products may be adjudicated in the courts of the State of Georgia. The Parties consent and waive any objection to the exercise of jurisdiction over them by such courts with respect to any such dispute or controversy."). Ostensibly Berry can claim that the Eastern District of Wisconsin is a home forum for it because it has a manufacturing facility in Racine, Wisconsin. As to what extent Berry's choice of forum was actually motivated by the fact its lawyers are based in Chicago, or the fact that Wisconsin would be decidedly more

-12-

Case 2:08-cv-00044-JPS    Filed 10/15/08    Page 12 of 17    Document 31

inconvenient for Faus than Georgia would be - as to those motivations, the court has no evidence. What is clear though, is that this case has no relation to Wisconsin. Berry states that "the manufacture of [the accused] products has occurred in three locations: 1) Racine, Wisconsin, 2) China and 3) Belgium." (Pl.'s Opp. Def.'s Mot. Dismiss at 13). However, this case hinges on two questions: 1) was Faus and IAF's termination of the license agreement valid?; and 2) were Faus and IAF's patents valid? If the answer to both those questions is "yes," then Berry's products that use Faus and IAF's patented technology infringe. If the answer to either question is "no," then the products do not infringe. In order to answer those questions, the proper court will need to examine the license agreement, hear testimony from witnesses from Europe (such as the inventor of the patents, and Berry's personnel and perhaps vendors, and Faus and IAF's personnel), and perhaps hear testimony and evidence from China (the location of the supplier whose role caused Faus and IAF to terminate Berry's license). There is nothing at a manufacturing plant in Racine, Wisconsin, that will answer those questions. Indeed, Berry admits as much in stating "most of the facts to be discovered in this case are foreign and equally inconvenient to both sides and equally inconvenient to both forums." *Id.* However, while Berry is correct that Wisconsin and Georgia are inconvenient forums, the fact remains that Georgia is a less inconvenient forum.

Given that much of the evidence is overseas, Georgia maybe inconvenient, however, both parties have already agreed in Article 11.1 of the licensing agreement

-13-

that it would be a convenient forum. "A forum selection clause," such as that found in Art. 11.1, "is treated as a manifestation of the parties' preferences as to a convenient forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3rd. Cir. 1995). "Hence, within the framework of § 1404, Congress 'encompasse[d] consideration of the parties' private expression of their venue preferences.'" *Id.* (citing *Stewart Org. Inc.*, v. Ricoh Corp.*,* U.S. 108 S.Ct. 2239, 2244 (1988)). Thus, the parties' agreement as to the most convenient or, put another way, least inconvenient, forum "is entitled to substantial consideration." *Jumara*, 55 F.3d at 880. It is true that the language of Art. 11.1 evidences a permissive rather than a mandatory forum selection clause. However, "[t]he permissive nature of the forum selection clause need not affect the weight it is given." *Haagen-Dazs Shoppe Co., Inc. v. Born*, 897 F. Supp. 122, 125 (S.D. N.Y. 1995) (citing *Cambridge Nutrition A.G. v. Fotheringham*, 840 F. Supp. 299, 301 (S.D. N.Y. 1994) ("Neither *The Bremen* nor *Carnival Cruise* places any reliance on or even discusses the fact that the clauses at issue in those cases used particular or compulsory terms."); *see also Stateline Power Corp. v. Kremer*, 404 F. Supp. 2d 1373, 1380-81 (S.D. Fla. 2005) (giving substantial weight to permissive forum selection cause in 1404(a) analysis). Indeed, even a permissive "forum selection clause is a manifestation of the parties assent to the fact that litigation in [the agreed upon] Court would be proper" and convenient. *Travelodge Hotels, Inc. v. Mangat Houston Race Track, LLC,* 2007 WL 2156367, 9 (D. N.J.) (holding that the other 1404(a) factors in the case were "insufficient to

-14-

outweigh the presumption set forth in the [permissive] forum selection clause."). Thus, the deference due the forum selection clause outweighs the preference ascribed Berry's choice of forum (whatever degree of weight that is in a post-*Micron* environment), especially given the fact that that preference has been eroded by the at least partially improper motives underlying Berry's actions.

While Art. 11.1 contains a permissive forum selection clause, it also contains a choice of law provision, the language of which is not permissive but, rather is mandatory. (Mollo Decl. Ex. B Art. 11.1) ("This Agreement (and any dispute controversy, proceedings, or claim of whatever nature arising out of or in any way relating to this Agreement) shall be governed by and construed in accordance with the laws of the State of Georgia, U.S.A., without regard to its conflicts of laws principles."). As previously mentioned, at the heart of this conflict is the question of whether Berry violated the licensing agreement by allowing a third party Chinese supplier to manufacture products for Berry utilizing Faus and IAF's patents. The question can only be answered by construing and interpreting the terms of the licensing agreement, which must be done, per Art. 11.1, in accordance with Georgia law. Even more perplexing is Faus mentions the choice of law clause in passing (Def. Mem. Supp. Mot. Dismiss at 4, 12-13), and Berry seems not to have mentioned it at all. Indeed, the parties' relative silence on such a crucial factor weighing in favor of transfer has led this court to question if perhaps it is "missing something." Yet, case law clearly holds that reasonable choice-of-law clauses should be enforced.

-15-

*Kuehn v. Childrens Hosp., Los Angeles*, 119 F.3d 1296, 1301 (7th Cir. 1997); *Mitsui & Co. USA), Inc. v. Mira M/V*, 111 F.3d 33, 35 (1997) ("The Supreme Court has consistently held forum-selection and choice-of-law clauses presumptively valid.") (citing *Vimar Seguros y Reaseguros, S.A. v. M/V SKY REEFER*, 115 S.Ct. 2322, 2329 (1995); *Carnival Cruise Lines, Inc. v. Shute*, 111 S.Ct. 1522, 1528 (1991); *M/S BREMEN v. Zapata Off-Shore Co.*, 92 S.Ct. 1907, 1916 (1972)). Therefore, since Berry has made no showing whatsoever as to why the choice-of-law clause it agreed to in the licensing agreement should not be enforced, this court finds it is a substantial, indeed - given the lack of any convenience factors in favor of Wisconsin - an independently sufficient rationale for transfer of this case to the Northern District of Georgia.

## III.    CONCLUSION

Berry's action in Wisconsin may have been the first filed, but any presumption that created for retaining venue here in Wisconsin is overcome by other factors indicating the action should be transferred. As the parties admit, when it comes to the availability of witnesses, absence of jurisdiction over all necessary parties, possibility of consolidation of litigation, and many of the other convenience factors courts normally look to, there is no difference between the Wisconsin forum and the Georgia forum. There is nothing that makes the Wisconsin forum more convenient. However, there is evidence that the Georgia forum is more convenient - namely, that

-16-

Case 2:08-cv-00044-JPS    Filed 10/15/08    Page 16 of 17    Document 31

the parties agreed that it was, and that the parties agreed that Georgia law would govern their dispute.

Accordingly,

**IT IS ORDERED** that Faus's Motion to Transfer Case to U.S. District Court for the Northern District of Georgia (Docket #11) be and the same is hereby **GRANTED**.

The clerk of the court is directed to take all appropriate steps to effectuate this transfer.

Dated at Milwaukee, Wisconsin, this 15th day of October, 2008.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge